**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

RODNEY A. SANCHEZ, Civil No. 01-CV-1140 (JEL/JGL)

Plaintiff,

v. **ORDER**

THE SAINT CLOUD HOUSING AND REDEVELOPMENT AUTHORITY,

Defendant.

---

Kurt B. Glaser, Esq., appeared for Plaintiff Rodney A. Sanchez.

Gerald W. Von Korff, Esq., appeared for the St. Cloud Housing and Redevelopment Authority.

---

THIS MATTER came before the undersigned Judge of the District Court on August 5, 2002, for a hearing on Defendant's Motion for Summary Judgment. For the reasons detailed below, the Court orders that Defendant's Motion for Summary Judgment be denied.

1. Background

In July of 1996, Plaintiff, Rodney A. Sanchez ("Sanchez"), began working as a Public Housing Director for Defendant, St. Cloud Housing and Redevelopment Authority ("SCHRA"). Sanchez supervised 14 employees and managed over 700 public housing units owned by SCHRA.

In March of 1998, Marshall Weems ("Weems"), was hired as Executive Director, replacing Sanchez's former supervisor. Weems instituted a new personnel policy that required an employee to make direct contact with his or her supervisor when the employee was unable to come to work. The new policy became permanent in July of 1999. Sanchez repeatedly failed to follow the policy; instead of contacting Weems directly when he was late for work, Sanchez would leave a message either with a receptionist or on SCHRA's voice mailbox.

During his time with SCHRA, Sanchez experienced several problems while managing the public housing units. In 1997, he hired the father of his fiancé to work in a housing unit; the father used his passkey to enter a resident's apartment to proposition her for sex. In the spring of 1998,

FILED AUG 0 9 2002
RICHARD D. SLETTEN, CLERK
JUDGEMENT ENTERED
DEPUTY CLERK'S INITIALS

Sanchez hired a resident caretaker employee without conducting the mandatory criminal background check; the employee had to be fired when a background check revealed that he had a criminal record. Around this time, some of SCHRA's employees expressed concerns about tenants that had been admitted to the public housing units. In addition, Weems received notices from the Department of Housing and Urban Development ("HUD") that several of SCHRA's Public Housing Authority reports had not been filed, as required. Sanchez, whose duties included filing the necessary reports with HUD, maintained that SCHRA's accounting department was to blame for the delay. Nonetheless, through July of 1998, Sanchez received satisfactory annual reviews.

In August of 1998, Sanchez began to experience symptoms of depression. These symptoms affected his ability to concentrate and gave him overwhelming anxiety. Sanchez described having a fear of failure and being afraid to get out of bed. He also indicated that he had panic attacks on a regular basis.

Apparently, Sanchez's symptoms also affected his work. In 1999, Weems began receiving numerous complaints about Sanchez's performance. A number of employees complained that Sanchez was often unable to be found when he was supposed to be working. When Sanchez was around, he did not provide the employees with appropriate guidance.

In the summer of 1999, Sanchez and Weems met to discuss Weems' concerns about Sanchez's performance. Of particular concern to Weems was Sanchez's failure to make arrangements for his unexpected absences. Weems asked Sanchez if he was having any personal problems; he also reminded Sanchez that SCHRA had an Employee Assistance Program to assist him with any problems. Sanchez denied having any personal issues that would interfere with his work.

In July of 1999, Weems prepared an annual review for Sanchez. At the same time, Sanchez was to prepare a self-evaluation; Sanchez did not complete his evaluation until September. Weems found Sanchez's attendance to be "unsatisfactory" and an area where "improvement must be shown." He found Sanchez's focus on customer needs to be a "real area of strength." Weems' remarks about Sanchez's performance in the areas of Communication, Cooperation, Dependability, Initiative and Resourcefulness, Judgment, Planning and Organizational Effectiveness, and

Supervision were neither strongly favorable nor strongly unfavorable. Sanchez was not given a raise for that year. Weems and Sanchez met in September to discuss Weems' review. Weems expressed his frustration that Sanchez failed to contact him when he was going to be absent, as required by SCHRA's policy. Sanchez said he would work to improve in that area.

Six days after meeting with Weems, the HUD's regional office contacted Weems to inform him that SCHRA's annual budgetary submissions were long overdue and had to be received that day. Weems was completely unaware that the forms had not been filed. He contacted Sanchez and ordered him to return to the office. The forms were prepared that afternoon and faxed to the HUD office in Minneapolis.

Shortly thereafter, several employees met with Weems to lodge a formal complaint about Sanchez's performance. They considered Sanchez an unreliable supervisor. They lacked confidence in his ability to make decisions on issues of tenant safety and tenant admissions. They expressed frustration with the fact that Sanchez was often difficult to locate and had a tendency to miss important meetings and appointments.

Sanchez continued to miss important appointments. For example, Sanchez failed to attend a software training meeting and to contact Weems directly to explain his absence. The software trainers delayed the meeting as they awaited Sanchez's arrival. On another occasion, Sanchez missed a court appearance for an unlawful detainer hearing. Again, Sanchez did not notify Weems of his absence.

On October 26, 1999, Sanchez responded to his unfavorable annual review. In one paragraph of his letter, Sanchez remarked that he had been using a lot of sick time because he had been dealing with bouts of depression and was seeking proper counseling. He explained that the poor performance review prevented him from getting a raise; he offered a compromise whereby he would work on an improvement plan if Weems would improve part of Sanchez's score on his annual review. On November 3, 1999, Weems sent Sanchez a letter, complaining that Sanchez had recently missed work without contacting Weems directly; Weems' letter contained a written warning to Sanchez about unexcused and excessive tardiness. On November 5, 1999, Weems responded to Sanchez's letter of October 26, 1999; while Weems responded to many of the issues

addressed in Sanchez's letter, he did not respond to Sanchez's remarks about depression. Weems rejected Sanchez's offer of compromise, concluding that Sanchez's annual review concerned Sanchez's performance in the prior year. Any subsequent improvement Sanchez made would be addressed in his next annual review. He asked Sanchez to notify him if there was anything he could do to help.

On November 8, 1999, Sanchez appealed his poor performance review and the written warning contained in Weems' November 3rd letter to Jeannette Bineham ("Bineham"), the Board Chair. Sanchez's appeal made no mention of his depression. On November 11, 1999, Sanchez met with Bineham and asked her for a flexible work schedule and an amendment to his performance review. On November 17th and 30th, Sanchez met with Joan Held of SCHRA's Employee Assistance Program to discuss his symptoms of depression. Near the end of November, an employee in the Housing Division resigned because of the problems caused by Sanchez's performance.

On December 3, 1999, Sanchez was terminated. On December 7, 1999, Sanchez was offered a separation agreement whereby he would release SCHRA of any claims Sanchez might have for, among other things, "claims for violation of...federal, state, or local civil rights law." Sanchez rejected SCHRA's offer. On December 15, 1999, Sanchez was diagnosed with major depression and post-traumatic stress disorder.

2. <u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the case may be decided on purely legal grounds. Fed. R. Civ. P. 56(c); *Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). To be considered material, any disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a

disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586, n. 11; *see also Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); Fed. R. Civ. P. 56(e).

Thus, The moving party is entitled to summary judgment where the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial. *Celotex*, 477 U.S. at 323. When there can be no reasonable construction of the facts that would allow the non-moving party to prevail, the remedy of summary judgment is appropriate. *Matsushita*, 475 U.S. at 586-87. Summary judgment is not appropriate, however, where there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250.

The Eighth Circuit has cautioned "that summary judgment should seldom be used in employment-discrimination cases." *Smith v. St. Louis University*, 109 F.3d 1261, 1264 (8th Cir. 1997)(*quoting Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994).

3. ADA Claims

In evaluating and ADA claim, the Court applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Greer v. Emerson Electric Co.*, 185 F.3d 917, 920 (8th Cir. 1999). To survive a motion for summary judgment, the plaintiff in an employment discrimination case must initially present a prima facie case. *Land v. Washington County*, 243 F.3d 1093, 1095 (8th Cir. 2001). The Defendant must then rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999). If the employer does this, the burden of production shifts back to the Plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual. *Id.*

To establish a prima facie case of discrimination under the ADA, an employee must show

that he or she: (1) is disabled within the meaning of the ADA; (2) is qualified (with or without reasonable accommodation) to perform the essential functions of the job at issue; and (3) has suffered adverse employment action under circumstances giving rise to an inference of unlawful discrimination. *Land*, 243 F.3d at 1095. Viewing the evidence in the light most favorable to the non-moving party, Sanchez has established a prima facie case of discrimination. In so concluding, the Court distinguishes this case from *Cooper v. Olin Corp, Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir. 2001). In *Cooper*, the Eighth Circuit concluded that the Plaintiff had not shown that she was disabled by depression, since she had lived with depression for 30 years and led a relatively normal life. Here, Sanchez's performance at work quickly deteriorated after the onset of his symptoms. His satisfactory performance of his work for two years establishes that he was qualified. Finally, that Sanchez was terminated shortly after revealing to Weems that he suffered from depression gives rise to an inference of unlawful discrimination.

Likewise, SCHRA has satisfied its burden under the *McDonnell Douglas* test. There is sufficient evidence in the record for a jury to conclude that Sanchez was terminated because his performance at work was inadequate.

However, there is also evidence that SCHRA's decision was pretextual. Sanchez's October 26, 1999 letter to Weems mentioned that Sanchez suffered from depression. Weems' November 5, 1999 letter was written in response to Sanchez's letter. Although Weems' letter stated that his responses were made in the same order as they were laid out in Sanchez's letter, a close comparison of the two letters reveals that not only did Weems fail to respond to Sanchez's remarks about depression, but that Sanchez's paragraph on depression was the *only* paragraph to which Weems failed to respond. Subsequently, Sanchez appealed Weems' decision to the Board Chair, from whom he requested a reasonable accommodation. He also sought help from the Employee Assistance Program. A little over a month after Sanchez revealed he suffered from depression, Weems' terminated his employment without giving an explanation. A few days later, SCHRA attempted to secure a release for any claims that Sanchez had for violations of his civil rights. Taking these facts in the light most favorable to Sanchez, the Court concludes that a jury could find that SCHRA's actions were pretextual.

4. Conclusion

Based upon the foregoing, the Court concludes that SCHRA has not demonstrated that it is entitled to judgment as a matter of law.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. The St. Cloud Housing and Redevelopment Authority's Motion for Summary Judgment is DENIED [Docket No. 10].

Dated: Aug. 9, 2002

JOAN E. LANCASTER
United States District Judge